THE STATE v. ELIJAH MOORE.

*Trial—Removing Jury from Court Room — Discretion—Evidence—Res gestæ—Public Holidays —Indictment —Statute— Constitution.*

1. The presiding Judge may, when he thinks the interests of justice require. direct that the jury be removed from the court-room while a proposition to introduce evidence—involving a statement of the matters proposed to be proved—is being debated. Ordinarily, this is a matter of discretion, but its exercise, under some circumstances, may be subject to review upon appeal.

2. The prisoner, shortly before his arrest on the charge of murder, had been apprehended for an assault upon his wife ; upon the arrest for murder he said he had already given bond, and expressed his surprise at being again taken into custody: *Held*, that this was not *res gestæ*, and his declarations were incompetent evidence for him.

.3. Evidence that the prisoner, near the time of the homicide, was
    engaged in a disgraceful quarrel with his wife, the deceased
    being present and partly the subject of the wrangle, and that
    prisoner then threatend to kill deceased, and was shortly there-
    after seen to follow her in the direction of the place where the
    mortal blow was given, was competent against him to show
    motive and opportunity.

4. The statute (*The Code,* §§ 3782–3784) declaring certain days public
   holidays, does not prohibit the pursuit of the usual avocations of
   citizens, nor public officers, or the Courts from exercising their
   respective functions on those days.    While it might be, the
   attendance of jurors, witnesses and suitors will not be enforced,
   and the Courts will not sue out or enforce process on such days,
   yet the Courts may lawfully proceed with the business before
   them.

5. The indictment in this case is in conformity with the Act of 1889,
   ch. 58, which is not in conflict with the Constitution of the
   State.

This an Indictment for Murder, tried before *Bynum, J.,* at
February Term, 1889, of GUILFORD Superior Court.

The facts are stated in the opinion.   The following is a
copy of the indictment:

"STATE OF NORTH CAROLINA, } Superior  Court,
    " Guilford County.      }          December Term.

"The jurors for the State, upon their oath, present that
Elijah Moore, late of Guilford County, not having the fear
of God before his eyes, but being moved and seduced by the
instigation of the devil, on the seventeenth day of October,
in the year of our Lord one thousand eight hundred and
eighty-eight, with force and arms, at and in said county,
feloniously, wilfully and of his malice aforethought, did kill
and murder Laura Hiatt, contrary to the form of the statute
in such case made and provided, and against the peace and
dignity of the State."

The Attorney General, for the State.
Mr. J. T. Morehead, for the defendant.

STATE v. MOORE.

MERRIMON, C. J.: Upon his arraignment, the prisoner pleaded to this indictment not guilty. On the trial, the jury rendered a verdict of guilty. Thereupon, he moved in arrest of judgment, but the Court overruled the motion in that respect, and gave judgment of death against him, from which he appealed.

On the trial, on the cross-examination of a witness by the prisoner's counsel, the latter put to the witness a question to which the Solicitor for the State objected. The prisoner's counsel at once began to state to the Court what evidence he desired and expected to elicit. The Solicitor objected to his making his statement in the presence of the jury, and requested the Court to send it out of the court-chamber until the counsel could make his statement. The Court granted this request, sending the jury out in charge of an officer sworn specially as prescribed by the statute (*The Code*, § 3315, par. 22). This is assigned as error.

We think the Court had discretionary authority to grant the request, as it did do. It might be that the question would elicit incompetent evidence, if allowed, and that the mere statement of it, as proposed, in the presence of the jury, might make, or tend more or less strongly to make, a false or improper impression on the minds of the jurors, or some of them. It is the province of the Court to prevent such possible evil when it can properly, and thus help to secure a fair and impartial trial. It must judge of the necessity for such an unusual step, and its exercise of a sound discretion in doing so would not ordinarily be the subject of review here. Such cautionary practice cannot of itself prejudice the State or the prisoner—we cannot see how it could—but if it should be made to appear probable that by some untoward event the prisoner was prejudiced thereby, the Court would promptly interfere for his protection, and in such case, if it should refuse to do so, its action in such

respect might be the subject of review. Neither the State nor the prisoner has the right to have the benefit of false impressions made upon the minds of the jurors, and it is the duty of the Court to prevent such impressions as far as it can do so consistently with the course of orderly procedure. The Court should exercise such authority only when it deems it important so to do, and it should be careful to see that the jury during its absence is in the charge of a faithful officer of the Court duly sworn. While such practice has not been common, it is within our knowledge, and that of many gentlemen of the bar of large experience, that the Judges of the Superior Courts have frequently exercised such authority without injustice to parties, and in some instances in aid of the due administration of justice.

On the cross-examination of a policeman, introduced for the State, the prisoner proposed to prove by him that on the night of the homicide he had arrested the prisoner for an assault upon his own wife; that afterwards on the same night this witness arrested him for the alleged murder of the deceased, not telling him at first why he did so; that the prisoner remonstrated with him as to the second arrest, saying that he had already "given his bond to appear next day," and manifested surprise at the second arrest. On objection, the Court excluded the proposed evidence, and the prisoner excepted.

This exception is without force. What the prisoner said to the witness was not part of the *res gestæ*, and he could not be allowed thus to make evidence in his own behalf. What he said to the witness may have been a mere device to mislead the officer and help to shield himself from justice.

Another witness for the State gave evidence of a noisy, clamorous and disgraceful quarrel between the prisoner and his wife, in their own house, on the night of the homicide, the deceased being partly the subject of the quarrel; that

she was present close to the prisoner's house pending that quarrel; that the prisoner saw her there; cursed and threatened to kill her that night; that he followed her, keeping a few steps from her &c., &c. The evidence was objected to on the ground that it tended to scandalize the prisoner before the jury, &c., &c.

The Court properly received it. Obviously, the exception is unfounded. The evidence went strongly to prove threats, motive, opportunity and pursuit of the deceased. It was not received to scandalize and unjustly prejudice the prisoner, but to prove important and material facts that the witness could not give evidence of without speaking of the scandalous quarrel—it was inseparably connected with the evidence of the crime, and the prisoner cannot justly complain that it placed him in a bad light on the trial, of tremendous moment to him.

It appears that the trial in this action began on Thursday, the twenty-first day of February, 1889—that on that day all the evidence was received and the counsel began their argument to the jury—that on the next succeeding day, Friday, the 22d of the same month, without objection from the prisoner or his counsel, or any person, the argument was concluded—the Court gave the jury instructions and they rendered the verdict of guilty; whereupon, the prisoner's counsel moved for a new trial, assigning in support of his motion, among other grounds, that the day was a legal holiday. He insisted that, therefore, the verdict of the jury and all proceedings in the action on that day were void. The Court denied the motion and gave judgment. This is assigned as error.

The statute (*The Code*, § 3784) simply declares that the 22d day of February, and other days therein specified, in each year, shall be public holidays, and prescribes when papers coming due on such days, or on Sunday, shall be payable.

It does not purport, in terms or effect, to prohibit persons from pursuing their usual avocations on such days, nor is there any inhibition upon public officers to exercise their offices respectively; nor particularly, for the present purpose, is there any inhibition upon the Courts to sit on such days and exercise their functions and authority. There is no such statutory inhibition. Nor, indeed, is there any, except such as may arise in the application of general principles of law.

It has never been understood to be the law in this State that a public holiday is *dies non juridicus*, except perhaps to a limited extent; it is very certainly not wholly so. The Courts, particularly the Superior Courts, very frequently sit on such days, and hear and try causes and dispatch the business that ordinarily comes before them, especially when there is no objection Frequently, however, they do not so sit, and it seems to us that, ordinarily, it would be better that they should not, and thus encourage the spirit and purpose of them. It may be that suitors, jurors, witnesses and others are not bound to attend Court on legal holidays; but if they do, and the Court proceeds with the business before it, it is not unlawful to do so, nor is it error of the Court in any particular case or matter to so hear and dispose of it, unless it shall appear that a party thereby suffered injustice or prejudice. Inasmuch as business of all kinds is generally suspended on such days, and the law so allows and permits, it may not be lawful then to sue out or execute civil process, notices and the like. But if that be so, it is otherwise as to cases and business pending before the Courts, if the Court proceeds in the same without prejudice to parties interested; and this is so, because the statute simply *permits* such suspension of business, but does not make it unlawful to do and transact official business, whether judicial or otherwise.

The correctness of what we have thus said is made more manifest by reference to the statute (*The Code*, §§ 3782, 3783)

in respect to *Sunday*, and decisions of this Court as to judicial proceedings in certain cases on that day. The statute positively forbids every person, whether on land or water, to " do or exercise any labor, business, or work of ordinary calling, works of necessity or charity alone excepted," &c., on Sunday. In view of this statutory provision, and the nature and purposes of Sunday, this Court, while holding that it is, for many purposes, *dies non juridicus*, has repeatedly decided that it is not assignable as error that the Superior Court sat on Sunday pending the trial of capital and other cases continued from Saturday night before that day. Thus, in *State* v. *Ricketts*, 74 N. C., 187, the defendant was indicted for *perjury;* the trial began on Saturday, and the jury did not render their verdict of guilty until the next day (Sunday). It was contended for the defendant that the verdict and proceedings of the latter day were void. This Court held otherwise, that the verdict was valid. Afterwards, in *State* v. *McGimsey*, 80 N. C., 377, which was a capital case, the Court said: " We think there is nothing in the objection raised that the Court was held on Sunday for the purpose of this trial, under the circumstances," citing *State* v. *Ricketts, supra*. These cases were afterwards recognized in *State* v. *Howard*, 82 N. C , 623; see, also, *Bland* v. *Whitfield*, 1 Jones, 123; *Branch* v. *Railroad Company*, 77 N. C., 347; *Devries* v. *Summit*, 86 N. C., 126.

It does not appear—it is not suggested—that the prisoner in this case suffered the slightest prejudice because the jury rendered their verdict of guilty, and the Court gave judgment against him, on a holiday. He had every advantage— every safeguard about him then that he could have had on any other day. And, as we have seen, there was neither principle, nor statute, nor precedent, nor practice in this State, that made it unlawful for the Court to sit, as it did do, on the holiday mentioned. Hence, the error assigned is without foundation or force.

We think also that the motion in arrest of judgment upon the ground of insufficiency of the indictment was properly denied. The indictment would not be good at the common law, because it does not charge the means whereby the prisoner slew the deceased, nor the manner of the slaying; but it is, in every material respect, such as the statute (Acts 1887, chap. 58) prescribes and declares shall be sufficient. It is, in substance and effect, a formal accusation of the prisoner of the crime specified. It was presented by a grand jury— it shows upon its face the facts that gave the Court jurisdiction—it charges, in words having precise legal import, the nature of the offence charged—it specifies with certainty the person charged to have been murdered by the prisoner. By it he was put on notice, and could learn of the charge he was called upon to answer—he could learn from it how to plead and make defence. The reasons of the perpetration of the crime and the manner of its perpetration are of the incidents—not of the substance—of the crime charged. To charge them might facilitate the defence, but this is not essential to it—it is essential that the substance of the crime shall be charged—this gives sufficient notice to put the prisoner on inquiry as to all the incidents, and every aspect of it. Nor does this in any degree abridge or militate against the provisions of the Constitution (Art. I, § 12), which provides that "No person shall be put to answer any criminal charge except as hereinafter allowed, but by indictment, presentment or impeachment." The mere form of the indictment—any particular form—is not thus made essential. The purpose is to require that the party charged with crime by indictment shall be so charged by a grand jury as that he can learn with reasonable certainty the nature of the crime of which he is accused and make defence. As we have said, it is not necessary in doing so to charge the particular incidents of it—the particular means employed in perpetrating and the particular manner of it, and thus com-

pel the State to prove that it was done with such particular means, and in such way, and no other. Such particularity might defeat or delay justice in many cases, as, indeed, it has sometimes done.

The Constitution (Art. IV, § 12) confers upon the General Assembly power to regulate and prescribe criminal as well as civil procedure, not inconsistent with its provisions, "of all the Courts below the Supreme Court." The form of the indictment prescribed by the statute (Acts 1887, chap. 58) is not inconsistent with any provision of the Constitution. It is sufficient to serve the purpose intended by it, and it is not our province to determine that it is better or worse than the common law indictment in such cases. It is substantially such as has been adopted by statutes in murder cases in several States of the Union and in England. Laws Penn., 1860, No. 375, § 20; Revised Statutes of Ind. (1881), § 1746; Annotated Stats. Ill., Div. XI, 1468; *Pecple* v. *King,* 27 Cal., 507; *People* v. *Davis,* 73 Cal., 355; Pick. Stat. at Large (14 and 15 Vic.), chap. 100, § 4.

There is no error, and the judgment must be affirmed.

Affirmed.