STATE v. CLARENCE TURBERVILLE.

(Filed 16 December, 1953.)

**1. Automobiles § 28d—**

In this prosecution for homicide growing out of an automobile collision, testimony that defendant was staggering *is held* upon the record to refer to defendant's actions shortly before the collision and not to defendant's actions at the coroner's inquest some time after the accident, and therefore exception to the admission of the testimony is not sustained.

STATE *v.* TURBERVILLE.

**2. Criminal Law § 48c—**

The general admission of evidence competent only for the purpose of corroboration will not be held for error in the absence of a request by defendant at the time of its admission that its purpose be restricted.

**3. Automobiles § 28e—Evidence held sufficient to sustain verdict of guilty of manslaughter.**

Evidence tending to show that shortly before the accident defendant was staggering and cursing, that he declared his intention to drive his car, and got in the driver's seat and drove off in a rapid manner in the direction of the scene of the collision, that the car was not stopped nor the driver changed, and that immediately before and at the point of collision the car was being driven on its left side of the center line of the highway at a speed of from 40 to 50 miles per hour approaching the crest of a hill, resulting in a collision with a car traveling in the opposite direction, in which several occupants of the cars were fatally injured, *is held* sufficient to sustain verdict of involuntary manslaughter.

**4. Criminal Law § 52a (4)—**

Defendant's evidence in conflict with that of the State cannot justify nonsuit, since conflict in the testimony is for the jury to resolve.

**5. Automobiles §§ 28f, 30d—Instruction defining under the influence of intoxicating liquor held not prejudicial.**

An instruction that a person is under the influence of intoxicating beverages if he has drunk such a quantity thereof as to cause him to lose the normal control of his bodily or mental "factors" or both to such an extent as to cause partial impairment of either or both of these "factors," *is held* insufficient to justify a new trial, it being apparent that "factors" was used for the word "faculties" and must have been so understood by the jury, and the term "partial impairment" being insufficient to constitute prejudicial error when read in connection with other portions of the charge.

**6. Criminal Law § 81c (2)—**

An excerpt from the charge will not be held for reversible error when the charge construed contextually is not prejudicial.

**7. Criminal Law § 79—**

Exceptions not set out in the brief and in support of which no argument is stated or authority cited, are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

APPEAL by defendant from *McLean, Special Judge,* at May Criminal Term, 1953, of ROBESON.

Criminal prosecution upon a bill of indictment, containing three counts, charging that defendant "did unlawfully, willfully, and feloniously kill and slay" (1) "one Bristow Leggett," (2) "one Steve Leggett," and (3) "one L. K. Turberville," against the form of the statute in such cases made and provided, and against the peace and dignity of the State.

The defendant pleaded not guilty.

The case on appeal discloses that upon trial in Superior Court these facts appear to be uncontroverted: Early Sunday night, 2 November, 1952, there was an automobile collision on Highway No. 41 at a point in the State of North Carolina about six and a half miles south of Fairmont, North Carolina, and north of Lake View, South Carolina. The collision was between a 1950 Ford, headed south and operated by one LeGrand Hardin, and a 1946 Ford, owned and occupied by defendant Clarence Turberville and others. And as a result of this collision Bristow Leggett, Steve Leggett and L. K. Turberville came to their deaths.

The State offered testimony of Willie James Wilson, tending to show that "a little after night" on 2 November, 1952, defendant was seen at Mayo's filling station located in South Carolina between Lake View and the North Carolina State line; that he was getting out of a car "on the driving side"; that he was heard to talk and seen to walk; that "he was staggering around the place cussing"; that someone was heard to make a statement to him, after which he said that "if they were going to get in and to go ahead," and "in reply to what they said, he said he drove the G— d— car there and he was going to drive the d— thing away"; that "he was talking about the car, and got in the car on the driving side"; that he left, and "when he drove off he patted the gas and spinned his wheels until he hit the highway"; and when he got on the road "he drove off fast" . . . headed the way the wreck happened.

And the State offered evidence tending to show that the wreck or collision occurred near and south of the crest of a hill about four miles north of Mayo's filling station, from which point the highway is paved and straight both north and south.

And LeGrand Hardin, as witness for the State, testified substantially as follows: That he was driving what is known as the Leggett car, "a '50 Ford," at the time of the collision; that Bristow Leggett and Steve Leggett were with him,—Bristow in the middle and Steve on the outside; that they left Fairmont, North Carolina, about 6:30, headed for South Robeson School house; that it was then dark; that as they were traveling along, about 7:30 o'clock, driving 45 and 50 miles an hour, on the right side of the road, upgrade after having crossed Ashpole Swamp, where the road is straight, he saw the lights of a car—quoting him, "I saw the lights coming up the hill; I couldn't tell what side of the road it was on; just as I climbed the hill I saw his bright lights ahead and the car on my side; . . . I whipped and turned the car over on his side of the road to try to miss him; he hit me; the car I was meeting was on the road at the time it hit me; it was on my side; all I know is that the front end hit my car; my opinion is that the other car was running pretty fast when I saw him coming on my side of the road; I do not know what happened when it struck my car. I do not know what happened after that. I came to after

a while . . . my ribs were crushed and some of them broken, my chin cut . . . and my left leg hurt. I stayed in the hospital from that night until Tuesday or Wednesday afternoon . . ."

And on cross-examination the witness Hardin said, among other things, "When I hit the crest of the hill the car was on my side right in my face . . . it was all the way across the line on my side of the road . . . almost on the shoulder of the road . . . I cut my wheels to the left . . . I had gotten my left wheel over the center line when the collision took place. It was not exactly a head-on. He hit me on my right side—the front fender . . ."

F. F. Bowen, a State Highway patrolman, testified that he went to the scene of the collision, and found the '50 Ford four-door sedan and a '46 Ford convertible coupe had collided in the middle of the road,—the '50 Ford headed south and the '46 Ford headed north—near the center of the highway; that there were signs on the left portion of the shoulder, coming north from Lake View; and, quoting, "I saw L. K. Turberville, the deceased, that was in the convertible; he was lying in the road near the convertible . . . unconscious and bleeding; I saw Bristow Leggett there, —he was in the ambulance; I saw Steve Leggett,—he was in the automobile dead . . . in the right front seat of the automobile and kind of pushed up on top of the seat from the impact; I saw LeGrand Hardin there,—he was in the ambulance; I did not see Clarence Turberville . . . the '50 Ford . . . was in the left ditch on the left-hand side of the road headed south . . . the '46 Ford was lying across the white line of the road with the front of it headed in a westward direction overturned on its side; it had been over on the top but it had been overturned to get someone out,—the right front of it was the point of impact . . . the hood . . . was mashed in considerably,—the right front headlight, the right front wheel and the right front were demolished."

And this witness, continuing his testimony, said: "I saw Clarence Turberville that night when I arrived at the hospital . . . some 30 or 40 minutes later . . . he was lying on a stretcher in the corridor . . . I talked with him . . . on two separate occasions that night, the first time at 8 o'clock; the next time was approximately 8:30 or 9 o'clock; with respect to the wreck he told me that he, in company with Lee King, L. K. Turberville and Lloyd Hill, had proceeded from Red Springs earlier in the day to visit some friends in the vicinity of Fairmont; that he left his friends' home and relatives' home and went to Mayo Bass' establishment in South Carolina . . . When I asked him if he stopped anywhere he told me that he stopped at T. Ivey's home which is located between Barnesville and Fairmont; in the company of T. Ivey they went to Mayo Bass' and that T. drove; after they got to Mayo's he stated that he had a drink; he did not say what kind of drink he had; I asked him if he drove the car

away from there and he said he did not—that he was in the back seat asleep. I asked him who did, and he said he did not know . . . he said, 'I didn't know anything until I woke up in the hospital' . . ."

And this witness testified: "At the time I saw Clarence Turberville in the hospital he had a very strong odor of intoxicant on his breath, and while he was in the X-ray room he vomited, and this had a strong odor of intoxicant; he vomited twice in my presence."

And this witness further testified to conversation with Willie James Wilson, and with LeGrand Hardin tending to corroborate testimony given by each of them as hereinabove set forth.

LeGrand Hardin, being recalled to the stand, testified that on the Sunday afternoon that the accident happened when the Leggett boys and he were in the car none of them was drinking at all; and that along there about the swamp he did not see another automobile headed in the same direction, saying "I did not overtake one or pass one in there anywhere."

Defendant, reserving exception to the denial of his motion for judgment as of nonsuit as to each count in the bill of indictment, made when the State first rested, offered testimony tending: (1) To contradict the testimony of the State's witness, Willie James Wilson, in respect to conduct and movements of defendant at Mayo's filling station, and as to defendant driving to, and away from this station; (2) To show that defendant was not intoxicated; and (3) To show that L. K. Turberville, brother of defendant who was killed in the collision, was driving the car from Mayo's, and was driving when the wreck happened; and that the car had not stopped, nor had the driver been changed from Mayo's to where the wreck occurred.

Also Lloyd Hill, testifying as witness for defendant, said that he was in the back seat of defendant's car, and was injured in his breast, ribs broken, lung punctured and arms and legs skinned; and that he was in hospital "one day short of two weeks."

And Lee King, testifying as witness for defendant, said that he was on right-hand side of front seat, that he too was injured in the collision, a fracture between his eyes, and that he was in hospital for a month. This witness also testified in part: "I did not see a car approaching until we got to the hill . . . a slight hill just as you come into the swamp. We had never quite reached it, and just as we got about fifty yards from the crest of the hill two sets of car lights came up over the hill running side by side . . . I said 'Look out, L. K.,' and that was all. We were right on them. The car in which I was riding was on the right-hand side of the highway heading north. The car was being driven approximately 40 to 50 miles an hour. It might have been 50 miles an hour . . ."

Defendant renewed his motion at close of all the evidence for judgment as of nonsuit as to each count contained in the bill of indictment, and excepted to denial of the motion.

STATE *v.* TURBERVILLE.

Verdict: Guilty of involuntary manslaughter as charged in the first, second and third counts in the bill of indictment.

Judgment: On the first count: Confinement in the State's Prison at hard labor for a period of not less than 7 years nor more than 12 years.

On the second count: Confinement in the State's Prison at hard labor for a period of not less than 12 years nor more than 20 years, to commence at the expiration of the sentence pronounced on the first count,— not to run concurrently therewith, but suspended for a period of ten years upon conditions stated.

And the court, in its discretion, ordered the verdict on the third count in the bill of indictment be set aside, and directs a verdict of not guilty be entered as to said third count.

Defendant appeals therefrom to Supreme Court, and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*F. D. Hackett, Jr., and Nance & Barrington for defendant, appellant.*

WINBORNE, J. Defendant, in brief filed in this Court, brings forward assignments of error based upon exceptions to: (1) Matters of evidence, (2) denial of motions for judgment as of nonsuit, and (3) portions of the charge as given to the jury.

I. As to matters of evidence: (a) Exception No. 1 is taken to this question and answer: "How did he walk? A. He staggered." The witness had testified that he observed the defendant as he walked from the station out to the car. It is contended that this evidence coming in chronology of events as clearly shown in the record, referred to the condition of the defendant at the coroner's inquest in Fairmont, N. C., and does not come "within the rule that proof of the commission of other like offenses may be admitted to show the *scienter,* intent and motive when the crimes are so connected or associated that the evidence will throw light on the question under consideration," *S. v. Godwin,* 224 N.C. 846, 32 S.E. 2d 609, and is prejudicial to defendant.

On the other hand, the State, in brief filed here, has a different, and we think a proper, interpretation of the connection in which the question was asked. The witness, Wilson, had testified that he saw defendant walk at Mayo's filling station; that "he was staggering around the place . . . that he went in the station," that he, the witness, heard defendant in the station, and, quoting, "I saw him walking and he was staggering." It, therefore, seems from reading the whole testimony of the witness that the inquiry as to how defendant was walking referred to how he walked at Mayo's filling station, and not at a station at the coroner's inquest.

(b) Exceptions 2 and 3. The State Highway Patrolman Bowen testi-
fied that he had talked with the witness Willie James Wilson, and that he,
Wilson, had made a statement to him. Then the witness was asked "What
was that?", to which he answered. The record shows that it was "offered
for corroboration of Wilson only." And reference to the testimony of
Wilson, as it appears in the case on appeal, shows that Mr. Bowen talked
with him. Indeed, the record fails to show that defendant asked, at the
time of the admission of the evidence, that the purpose be restricted.
Therefore, these exceptions are untenable. See *S. v. Walker,* 226 N.C.
458, 38 S.E. 2d 531.

II. Exceptions 4 and 8: These relate to the denial of defendant's
motions for judgment as in case of nonsuit. In this connection it appears
from the case on appeal that the case was tried on the theory as contended
by the State that the offenses charged against defendant were the proxi-
mate result of culpable negligence of defendant in that at the time of the
collision involved he was violating these statutes: (1) G.S. 20-138 declar-
ing "it shall be unlawful and punishable . . . for any person . . . who
is under the influence of intoxicating liquor or narcotic drugs to drive
any vehicle upon a highway within this State"; (2) G.S. 20-140 which
declares that "Any person who drives any vehicle upon a highway care-
lessly and heedlessly in willful or wanton disregard of the rights or safety
of others, or without due caution and circumspection and at a speed or
in a manner so as to endanger or be likely to endanger any person or
property, shall be guilty of reckless driving," and upon conviction shall
be punished; and (3) G.S. 20-146 which declares that "upon all high-
ways of sufficient width, except one-way streets, the driver of a vehicle
shall drive the same upon the right half of the highway . . . except when
overtaking and passing another vehicle subject to the limitations in over-
taking and passing set forth in Sections 20-149 and 20-150."

Defendant argues and contends that circumstantial evidence must point
unerringly to the guilt of defendant, and that it must be so strong as to
exclude every reasonable hypothesis except that of guilt. Even so, taking
the evidence offered by the State, and so much of defendant's evidence as
is favorable to the State, or tends to explain and make clear that which
has been offered by the State, as is done in considering a motion for judg-
ment as of nonsuit, this Court is of opinion and is impelled to hold that
there is sufficient evidence to carry the case to the jury on the question of
the guilt of defendant on each of the offenses with which defendant stands
charged, and to support a verdict of guilty, beyond a reasonable doubt, as
to each of the two offenses of which defendant stands convicted. See *S. v.
Nall, post,* 60.

There is evidence that defendant was staggering and cursing at Mayo's
filling station, that he declared his intention to drive his car, and got in

the driver's seat, and drove off in rapid manner, in the direction of the scene of the collision in which his car was involved, that his car was not stopped nor had the driver been changed between the Mayo's filling station and the point of collision, and that immediately before and at the point of collision his car was being driven on its left side of the center line of the highway at a speed of from 40 to 50 miles per hour—approaching the crest of a hill, and that death and destruction resulted.

True, there is conflict of evidence. However, this was a matter for the jury to solve. And the jury has accepted the version of the State.

III. (a) Exception 14 is directed to this portion of the charge: "A person is under the influence of intoxicating or narcotic drugs within the meaning and intent of this Section when he has drunk such a quantity of intoxicating beverages to cause him to lose the normal control of his bodily or mental factors or both to such an extent as to cause partial impairment of either or both of these factors." Like language used as a statement of contention of the State is the subject to which Exception 15 is directed. It will be assumed that the word "factors" was erroneously used for the word "faculties," and that the jury so understood it. But defendant says that he cannot say that the definition of "under the influence" is not error or that the error is a harmless one.

In this connection the statute G.S. 20-138 makes it unlawful and punishable for any person who is under the influence of intoxicating liquor to drive any vehicle upon the highways within the State.

And in *S. v. Carroll,* 226 N.C. 237, 37 S.E. 2d 688, in opinion by *Denny, J.,* this Court held to be erroneous a charge that: "Where a person has drunk a sufficient quantity of alcoholic liquor or beverage to affect, however slightly, his mind and his muscles, his mental and his physical faculties, then he is under the influence of intoxicating liquor or beverage." There, after discussing the subject, this Court held that "a person is under the influence of intoxicating liquor or narcotic drugs, within the meaning and intent of the statute, when he has drunk a sufficient quantity of intoxicating beverage or taken a sufficient amount of narcotic drugs to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is appreciable impairment of either or both of these faculties." The definition has since been the subject of exception, and decision in the cases of *S. v. Bowen,* 226 N.C. 601, 39 S.E. 2d 740; *S. v. Lee,* 237 N.C. 263, 74 S.E. 2d 654; and *S. v. Nall, post,* 60.

In the *Bowen case, supra,* the words "materially impaired" were used in lieu of "appreciable impairment." And this Court said that, while the language of the rule in the *Carroll case* is preferred, there is not sufficient difference in the meaning of the two terms for the rule given in the *Carroll case* to have been misunderstood by the jury.

In the *Lee case, supra,* the appellant contended that the use of the word "perceptibly" instead of the word "appreciable" in connection with "impairment" without explanation of what it means, was prejudicial error. But this Court said again that while the language of the rule in *Carroll case, supra,* is preferred, the Court fails to see in the word "perceptible" sufficient difference in meaning and common understanding for the rule given in the *Carroll case, supra,* to have been misunderstood by the jury.

And in the *Nall case,* the complaint was directed to the use of the words "any beverage containing alcohol," rather than "a sufficient quantity of intoxicating beverage." There it is stated that while this Court has commended and commends the definition enunciated by *Denny, J.,* in *S. v. Carroll, supra,* it is not deemed that the phraseology to which exception is taken is beyond the pale of the term, citing *S. v. Bowen, supra,* and *S. v. Lee, supra.*

Likewise in the present case this Court does not approve the use of the term "partial impairment" in defining what is meant by the term "under the influence of intoxicating beverage." Nevertheless, when the charge here given by the court is taken in connection with the evidence in this respect, and read in connection with the evidence as to, and charge on culpable negligence, it is not considered that harmful error appears.

III. (b) Exception 18 is to a portion of the charge in respect to the meaning of the word "recklessness." When, however, the definition is considered in the light of the charge read contextually prejudicial error is not shown.

Other exceptions in the record are not set out in appellant's brief, nor is reason or argument stated or authority cited in support of them. Hence they are taken as abandoned by him. Rule 28 of Rules of Practice in the Supreme Court. 221 N.C. 543, at 562.

Hence the decision here is

No error.