STATE v. DEL ADAMS.

(Filed 11 January, 1957.)

**1. Homicide § 25—**

The State's evidence tending to show that defendant sought out and shot the deceased with a pistol because of his belief that deceased had reported him for the illegal manufacture of liquor, *held* sufficient to overrule defendant's motions for nonsuit and sustain conviction of murder in the first degree.

**2. Homicide § 20—Where motive for killing is ill will resulting from indictment, State may prove indictment to establish motive.**

Where the State contends that defendant's motive for killing deceased was anger over defendant's belief that deceased had reported him for manufacturing liquor, the State's evidence tending to show that defendant was under indictment for possessing nontax-paid whiskey in connection with which defendant had made a statement threatening to kill anyone who accused him of making or selling whiskey, mentioning deceased's name in connection therewith, and in connection with which defendant's wife admitted on cross-examination that he was mad about the "man

who reported him for making whiskey," *held* competent for the purpose of showing motive and ill will towards the deceased, there being nothing to indicate that the evidence relative to defendant's illegal activities was introduced for the purpose of impeaching defendant's character.

**3. Criminal Law § 48c—**

The general admission of evidence which is competent for a restricted purpose will not be held for error in the absence of a request by defendant that its admission be restricted.

**4. Criminal Law § 29a—**

Evidence of a strong motive or interest to commit the offense proved to have been committed is a circumstance competent to be shown in evidence, since a man's conduct may be gathered from the motive known to have influenced him.

**5. Criminal Law § 81c (3)—**

Exception to testimony of the State's witness cannot be sustained when defendant or his witness testifies to substantially the same facts or the defendant admits such facts in his own testimony.

**6. Criminal Law § 53k—**

Where defendant does not contend that any of his contentions were omitted or incorrectly stated, assignment of error to the statement of contentions solely on the ground that the statement of the respective contentions of the parties was not of equal length, is untenable.

**7. Criminal Law § 79—**

Assignments of error not brought forward in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

JOHNSON, J., not sitting.

APPEAL by defendant from *McKeithen, S. J.,* February Term 1956 of JOHNSTON.

This is a criminal action in which the defendant was tried upon a bill of indictment charging him with the premeditated murder of one Raymond Hayes.

This case was here on appeal at the Fall Term 1955 from a judgment imposing the death penalty. A new trial was awarded for error of the trial judge in his instruction as to the legal effect of a recommendation of life imprisonment. See *S. v. Adams,* 243 N.C. 290, 90 S.E. 2d 383.

At the former trial, the defendant's defense was drunkenness. At the present trial, his plea was "not guilty," and a companion plea of "not guilty by reason of transitory insanity," which the defendant contends was brought about by the attentions which Raymond Hayes had been paying to the defendant's wife.

The evidence for the State discloses that around 4:00 o'clock in the afternoon of 1 July 1955 Raymond Hayes drove his car to the store of

Junie Surles, which is located about 100 yards from the home of the defendant, in Johnston County. Raymond Hayes entered the store and purchased some candy and a soft drink. While he was eating his candy and drinking the soft drink, the defendant came to the door of the store and said, "Step out of there, Raymond"; and Raymond said, "What in the world is the matter, Del?"; and Del said, "Come out, I am going to kill you." The defendant had a pistol in his hand, pointed at the deceased. Mrs. Surles, who was in charge of the store, said, "Del, please don't do that," and the defendant said, "Mrs. Surles, step aside." Mrs. Surles left by the door near which the defendant was standing, and ran for help. Just as she left the store, Hayes said to the defendant, "Don't shoot me, Del, don't shoot me." Immediately thereafter Mrs. Surles heard a pistol shot and Raymond Hayes holler, "Oh, you have killed me."

The State's evidence further tends to show that the defendant's motive in killing Raymond Hayes was his belief that Hayes had reported him to the Federal officers for making liquor. About two weeks before the defendant killed Raymond Hayes, he said, in the presence of Junie Surles and some other men, "If anybody got into his business, about his liquor business, . . . he was going to take his gun and blow their d . . . heads off." In connection with this statement, he called Raymond Hayes' name. After the shooting, the defendant disposed of the pistol he used and it has never been found. He went to Smithfield around 5:00 p.m. on 1 July and surrendered to a deputy Sheriff of Johnston County. The defendant, according to this officer's testimony, informed him that he had shot Raymond Hayes with a .32 automatic pistol he bought about eighteen months ago to kill him; the officer asked if he had killed him, and he said, "If I didn't kill him I didn't do what I intended to do." According to this officer, the defendant had been drinking but he was not drunk. "I asked Del where his still was and he told me where it was and I went and got it."

The defendant's wife testified in his behalf, and her evidence tends to show that the deceased had tried to get familiar with her, but without success. She testified that her husband spent Wednesday night at home but left early Thursday morning; "he was nervous when I woke him up; he acted upset and nervous and I knew something was wrong with him; . . . he didn't come back Thursday but came back to get a flashlight Thursday night and left; I next saw him Friday, July 1, about 4:00; he was driving his car and came back to the house; . . . I thought he was drinking; . . . Del said something about Raymond coming over there so much when he wasn't there; he had a gun in his hand; he said, 'Raymond Hayes has been over here and tried to get you to go out with him . . .'; he said he knew it and I might as well tell the truth; he had the gun in his hand and I knowed I had to tell

the truth and I said, 'Yes, he has.' It seemed to go over him and he left the house immediately; he just looked wild and seemed to just make him go crazy for that moment; . . . he went toward the store and I heard a shot just a few minutes later."

On cross-examination this witness testified that her husband acted like he was drinking, or she thought he was drinking; but that she didn't know whether he was drunk or mad. "I testified at the former trial that I didn't know of a reason in the world why my husband shot Raymond Hayes and I said that was the truth; . . . and Del said he didn't know why he killed Raymond; . . . I decided to tell the truth this time; . . . I don't know whether Del got mad cause he was reported to Officer Coats, the Federal Officer, or not. I heard him mention it but he was ranting about the man who reported him for making whiskey. I didn't see the whiskey still; . . . he might have sold whiskey from the house; I found out he had been reported about the distillery; . . . I might have told Mrs. Ethan Hayes that liquor was at the bottom of the killing."

The defendant, at his specific request, went on the stand and testified in his own behalf. On direct examination, after testifying as to his motive for shooting the deceased, the defendant stated to the jury: ". . . I went to the store and said, 'Raymond, you come out of the store, I am going to kill you,' and Mrs. Surles stepped in the way and I told her to get out of the way; Raymond asked what was the matter and I said, 'You know what's the matter'; 'you get out'; he wheeled and ran . . . and I shot him and said, 'I'll learn you to go out and keep taking over my home'; . . . I have been in trouble before; started out about the time I was 21 operating a still and have been convicted five or six times, including two times in the Federal Court; I was in prison for 12 months one time and 18 months the other; when I was 16 or 17 I was convicted of assault and was given 60 days; . . . I have been convicted of driving drunk somewhere about 1947 and 1950; at the time of the shooting I had a 100 gallon copper still over in the old Cole field and I told the officers about it."

On cross-examination the defendant testified, "I started on the career of crime when I was about 18; never been convicted of anything except whiskey and driving drunk; been convicted of assault once; . . . been sentenced to prison but it didn't stop me from bootlegging; . . . at the time I was put in jail I had $475.00; that was liquor money; I was raised up in the liquor business."

The jury returned a verdict of guilty as charged, without recommendation of mercy, and, upon a sentence imposing the death penalty, the defendant appealed to the Supreme Court, assigning error.

*Attorney-General Patton and Assistant Attorney-General Bruton for the State.*

*L. L. Levinson and Harry C. Canady for defendant.*

DENNY, J. Assignments of error Nos. 3 and 5 are based on the defendant's exceptions to the failure of the court below to sustain his motion for judgment as of nonsuit. The evidence disclosed by the record in this case is ample to sustain the verdict rendered by the jury in the trial below. These assignments of error are without merit.

Assignment of error No. 1 is based on a number of exceptions, each one having been taken to the admission of evidence relating to the defendant's activities as a dealer in and manufacturer of illicit whiskey, or to the defendant's statements in connection therewith. The defendant contends that this evidence constitutes an attack on his character and was inadmissible unless the defendant testified and offered evidence of his good character, citing Stansbury, North Carolina Evidence, section 104; *S. v. Nance*, 195 N.C. 47, 141 S.E. 468; *S. v. McKinnon*, 223 N.C. 160, 25 S.E. 2d 606; *S. v. Fowler*, 230 N.C. 470, 53 S.E. 2d 853; *S. v. McLamb*, 235 N.C. 251, 69 S.E. 2d 537.

We concede that if the State had offered the evidence complained of for the purpose of showing the bad character of the defendant, the objection raised would have some merit. However, it is apparent from the record in this case that the evidence was offered for the purpose of showing ill will towards the deceased and a motive for the killing. The evidence complained of was admissible for that purpose, and the defendant made no request that it be so restricted. *S. v. Walker*, 226 N.C. 458, 38 S.E. 2d 531; *S. v. Turberville*, 239 N.C. 25, 79 S.E. 2d 359; *S. v. Eason*, 242 N.C. 59, 86 S.E. 2d 774. There is nothing to indicate that the evidence under discussion was introduced or used for the purpose of showing the character of the defendant or to prejudice him before the jury. *S. v. Moore*, 104 N.C. 743, 10 S.E. 183; *S. v. Artis*, 227 N.C. 371, 42 S.E. 2d 409. Furthermore, Rule 21 of the Rules of Practice in the Supreme Court, 221 N.C. 558, among other things, provides, "Nor will it be ground of exception that evidence competent for some purposes, but not for all, is admitted generally, unless the appellant asks, at the time of admission, that its purpose shall be restricted."

In the case of *S. v. Wilcox*, 132 N.C. 1120, 44 S.E. 625, this Court said: "In the administration of the criminal law any fact shedding light upon the motives of the transaction will not be excluded from the consideration of the jury, whether it goes to the attestation of innocence or points to the perpetrator of the crime . . . A man's motive may be gathered from his acts, and so his conduct may be gathered from the motive by which he was known to be influenced. Proof that the party accused was influenced by a strong motive of interest to

commit the offense proved to have been committed, although weak and inclusive in itself, yet it is a circumstance to be used in conjunction with others which tend to implicate the accused."

It will be noted that about two weeks before the defendant killed the deceased, he made a statement to a number of persons that if anybody accused him of making or selling whiskey he was going to "blow their d . . . heads off"; and the defendant mentioned the name of the deceased in connection with that statement or threat. *S. v. Smith*, 225 N.C. 78, 33 S.E. 2d 472; *S. v. Artis, supra; S. v. Fowler, supra; S. v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664.

Moreover, when the defendant went on the stand he testified on direct examination with respect to the number of times he had been convicted for violation of the liquor laws, and also stated that at the time of the shooting he had a 100 gallon copper still over in the Cole field. His evidence, when compared with the matters complained of, went far beyond the State's evidence. The State offered no evidence of a former conviction of the defendant of any specific crime; its evidence did show that the defendant was under indictment, charged with having nontax-paid whiskey in his possession, and that it was in connection with this charge that the defendant made the statement threatening to kill anyone who accused him of making or selling whiskey. The evidence also tends to show that it was in connection with this charge that the defendant's wife admitted on cross-examination that he "was ranting about the man who reported him for making whiskey." She also testified that she had "found out he had been reported about the distillery."

The defendant did deny, however, having threatened to kill anyone who interfered with his liquor business, but he did not deny that he had been constantly engaged in that business; in fact, he testified that he had been "raised up in the liquor business," and that he had "been sentenced to prison, but it didn't stop me from bootlegging."

Exceptions by the defendant to evidence of a State's witness will not be sustained where the defendant or his witness testifies, without objection, to substantially the same facts. *S. v. Matheson*, 225 N.C. 109, 33 S.E. 2d 590.

Likewise, the admission of evidence as to facts which the defendant admitted in his own testimony, cannot be held prejudicial. *S. v. Merritt*, 231 N.C. 59, 55 S.E. 2d 804. This assignment of error is overruled.

The assignments of error relating to the statement of the contentions by the trial judge are, in our opinion, feckless. The defendant does not contend that any of his contentions were omitted or incorrectly stated. *S. v. DeMai*, 227 N.C. 657, 44 S.E. 2d 218; *S. v. Smith*, 238 N.C. 82, 76 S.E. 2d 363; *S. v. Sparrow*, 244 N.C. 81, 92 S.E. 2d 448.

A careful study of the evidence and the charge leads us to the conclusion that the trial judge sufficiently and fairly reviewed the contentions of the defendant.

Other assignments of error based on exceptions in the record have not been brought forward and argued in the defendant's brief. Under Rule 28, Rules of Practice in the Supreme Court, 221 N.C. at page 562, they are deemed abandoned.

In our opinion, the defendant has had a fair trial and the result of the trial below will not be disturbed.

No error.

JOHNSON, J., not sitting.