STATE OF NORTH CAROLINA v. THEODORE ROOSEVELT BRIDGERS.

(Filed 20 April, 1966.)

**1. Criminal Law § 126—**

A motion to set aside the verdict on the ground that it is contrary to the weight of the evidence is addressed to the discretion of the trial court, and the denial of the motion is not reviewable on appeal.

**2. Criminal Law § 99—**

Upon motion to nonsuit and motion for a directed verdict, the evidence must be interpreted in the light most favorable to the State, giving the State the benefit of all reasonable inferences favorable to it.

**3. Automobiles § 59—**

Evidence in this case *held* amply sufficient to sustain verdict of defendant's guilt of manslaughter resulting from culpable negligence in the operation of an automobile.

**4. Criminal Law § 107—**

Where the State introduces eyewitness' testimony of the reckless and culpable negligent operation of a motor vehicle by defendant and the wreck of the vehicle causing the death of a passenger, together with corroborative circumstantial evidence that the vehicle seen a few moments prior to the accident being operated in a reckless manner was the same vehicle as that found at the scene of the wreck, it will not be held for error that the court failed to charge with reference to the nature of circumstantial evidence and the weight to be given it.

**5. Criminal Law § 50—**

Where a witness identifies by color and make the automobile which defendant was driving when it passed the witness, and the color and make of the vehicle at the scene of the wreck which the witness saw one minute thereafter, it will not be held for error that the witness was permitted to give his opinion that the vehicles were the same, the testimony being a "shorthand" statement of fact.

APPEAL by defendant from *Bailey, J.,* November 1965 Assigned Criminal Session of WAKE.

The defendant was indicted for manslaughter in connection with the death of Earline Williams on 4 September 1965. Through his court appointed counsel he entered a plea of not guilty. The jury found him guilty of involuntary manslaughter and he was sentenced to imprisonment in the State's Prison for a term of ten years. From this judgment he appeals, assigning as error the denial of his motion for judgment of nonsuit, both at the conclusion of the State's evidence and again at the conclusion of all the evidence; the denial of his motion for a directed verdict of not guilty; the denial of his motion that the verdict be set aside as contrary to the weight of the evidence; the failure of the court to charge the jury upon the law of circumstantial evidence; permitting the State's witness, Robert Clay, to state an opinion as set forth below; and the entry of the judgment.

The record shows that at the trial in the superior court it was stipulated that Earline Williams died as the result of an injury received in an automobile wreck on 4 September 1965.

In addition to this stipulation, the evidence offered by the State may be summarized as follows:

Robert Clay, an attorney practicing in Raleigh, testified that at approximately 9:30 p.m. on 4 September 1965, he was driving eastwardly on Highway 64 near the eastern city limits of Raleigh. When

near the Longview shopping center, the Clay vehicle was in the east-bound lane nearest the median strip separating the two eastbound lanes from the two westbound lanes of the highway. The Clay vehicle was overtaking another car in the right, or outer, lane for eastbound traffic, being about two car lengths behind it. A third car overtook the Clay vehicle and, at a high speed, swerved into the right or outer, eastbound lane, passed the Clay car, and cut sharply back in front of it, proceeding thence on in front of the Clay vehicle and, for a while, within the beams of its headlights. This third car was a green and white 1958 Ford operated by a Negro man, with a Negro woman as passenger in the right front seat. The Clay vehicle was then traveling 45 miles per hour, the established speed limit in that area. The green and white Ford was traveling in excess of 70 miles per hour. It disappeared from Mr. Clay's sight around a curve and over the crest of a hill. Approximately one minute later Mr. Clay saw "it again," at which time it was sitting still and smoking, having gone into the median strip of the highway and crashed there. The body of a woman was lying on the median strip some 20 feet from the car, and the body of a man was lying about six feet from the left front door of the car. This car was a 1958 green and white Ford and was in a wrecked condition.

At this point Mr. Clay was permitted, over objection, to testify that he had an opinion satisfactory to himself as to whether the wrecked car was the same car which had passed him approximately a minute earlier, that opinion being "that it was the same car."

Between the point where the green and white 1958 Ford, which passed him, disappeared from his sight and the point where Mr. Clay observed the wrecked green and white 1958 Ford, there were two entrance drives leading into Wake Memorial Hospital, an intersecting street, two cross-overs, and one other driveway coming into Highway 64. The area in which the green and white 1958 Ford passed the Clay automobile was well lighted by the lights of the shopping center and the headlights of the Clay automobile and those of the other automobile which Mr. Clay was about to overtake and pass. Mr. Clay did not observe any person in or around the wrecked green and white 1958 Ford other than the man and woman lying on the median strip of the highway. He observed no one moving away from the vicinity of the wreck.

Melvin Johnson testified that he was driving a taxicab east on Highway 64, near the hospital, when a 1957 Ford passed him traveling approximately 80 miles per hour. It never escaped from his sight from the time it passed him until it went into the median. Just before the point at which the Ford went into the median strip the

highway curved. In the opinion of this witness the Ford car was a two-tone green—light and dark. When the witness reached the point where the Ford had "landed in the embankment," he saw a woman and a man lying "on the embankment." There were no other people moving around near the Ford and he saw no one leaving the vicinity.

State Highway Patrolman Barefoot testified that at 9:45 p.m. he went to the scene of the accident and found a 1957 Ford wrecked in the median. He also found Earline Williams, who was dead, and the defendant. The Ford was green and white. At that point the westbound lanes are at a level some six feet higher than the eastbound lanes of the highway and the Ford had run into the embankment between them. The entire car was damaged extensively. The right front door was torn off the car. Earline Williams' body was found 57 feet from the car back toward Raleigh. The defendant was found 16 feet from the car. The top of the car indicated it had turned over. There were 632 feet of skid marks on the concrete and on the turf of the median strip. The car had struck a concrete culvert in the median. There was an odor of alcohol about the defendant. The accident had happened prior to the patrolman's arrival at 9:45 p.m.

The defendant's brother was the only witness called in his behalf. He testified, in summary:

At approximately 7:15 p.m. on 4 September 1965, he took his brother, the defendant, to his home, the defendant being unable to walk due to drinking. He put the defendant on a couch where the defendant "passed out." Thereafter, Earline Williams aroused the defendant and, with the help of his brother and another man, put the defendant in the right-hand seat of a 1957 Ford, which Earline Williams thereupon drove away from the home of the witness, which was in the City of Raleigh, a considerable distance from the place where the wreck occurred. The defendant and Earline Williams left the house of the witness at approximately 9:00 p.m.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*Gordon B. Kelley for defendant appellant.*

PER CURIAM. The defendant's motion to set aside the verdict on the ground that it is contrary to the weight of the evidence was addressed to the discretion of the trial court and is not reviewable upon appeal. *State v. Wagstaff,* 219 N.C. 15, 12 S.E. 2d 657; Strong, N. C. Index, Criminal Law, § 126.

There was no error in the denial of the motions for nonsuit and

the motion for a directed verdict of not guilty. Upon such motion the evidence must be interpreted in the light most favorable to the State, and all reasonable inferences favorable to the State must be drawn therefrom. *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169. So considered, there is ample evidence in the record of each element of the offense with which the defendant was charged and of which he has been found guilty.

There was no error in the failure of the court to instruct the jury with reference to the nature of circumstantial evidence and the weight to be given it. The witness Johnson testified that he did not lose sight of the Ford automobile from the time it passed him, traveling 80 or 90 miles per hour, until he saw it in the median, at which point he and others found the automobile wrecked and the body of the deceased lying a few feet from the car. *State v. Stevens,* 244 N.C. 40, 92 S.E. 2d 409; *State v. Flynn,* 230 N.C. 293, 52 S.E. 2d 791.

There was no error in allowing the witness Clay to state that in his opinion the wrecked automobile was the same one which had passed him and disappeared from his sight only one minute before he found it wrecked. The same witness had already testified, without objection, to the same effect. In any event, under the circumstances related by this witness, it would be absurd to require the witness to describe in minute detail the appearance of the automobile observed by him in each position, instead of simply stating that it was the same car in both places. Any testimony as to identity of an object said to have been seen on different occasions is an expression of opinion by the witness, but such expression is a mere shorthand summary of, perhaps, innumerable attributes of the object observed by the witness and leading him to such opinion. If the defendant had desired to do so he could, of course, have cross examined the witness as to the basis for such opinion.

The exception to the entering of the judgment is merely formal and is without merit.

No error.

MOORE, J., not sitting.