STATE v. ERNEST CHARLES BATTLE, JAMES BELL, JR., YOHANNES HAILE MARIAM, ALIAS HAROLD WESLEY JONES, ROOSEVELT WALLACE.

(Filed 16 June, 1966.)

**1. Criminal Law §§ 26, 122—**

In this prosecution of defendants for conspiracy to break and enter and with breaking and entering pursuant to the conspiracy, the court withdrew a juror and ordered a mistrial for the incapacitating illness of the sole attorney of one of.the defendants during the course of the trial. *Held:* The order of mistrial for the illness of the attorney in the prosecution for less than a capital felony was within the discretionary power of the trial court, and the order of mistrial will not support a plea of former jeopardy in the subsequent prosecution of defendants.

**2. Conspiracy § 6; Burglary and Unlawful Breakings § 4; Criminal Law § 101— Circumstantial evidence held sufficient to be submitted to the jury.**

Evidence tending to show that one defendant was found hiding in a building immediately after it had been broken into, that another defendant was seen coming from the direction of the rear of the building towards a car, parked some 60 feet from the building, in which the other defendants feigned sleep when the officers approached, and that defendants were together on the previous day when one of them rented a U-Haul truck in a municipality a hundred miles distant, which truck was later found abandoned in the vicinity of the crime, together with other circumstances, *held* sufficient to be submitted to the jury on the question of each defendant's guilt of conspiracy and breaking and entering.

**3. Criminal Law § 87—**

Where defendants are jointly indicted, their motion for a separate trial is addressed to the sound discretion of the trial court, to be determined in each particular case on the basis of possible prejudice in a joint trial.

**4. Same—**

Defendants were jointly indicted for conspiracy to break and enter and with breaking and entering pursuant to the conspiracy. *Held:* The court's denial of defendants' motions for a separate trial was not error, the motions being addressed to the sound discretion of the trial court.

5. **Trial § 15; Criminal Law § 155— Where answer of witness is unresponsive, objection without motion to strike or limit the answer is ordinarily ineffective.**

In this prosecution for conspiracy and with breaking and entering pursuant thereto, one of defendants was found hiding in the building which had been broken into, and the other defendants were connected with the offense only through him. An officer was asked on examination as a witness whether the defendant who had been found in the building had described and identified a U-Haul truck which had been found abandoned in the vicinity, and the. officer replied that defendant had done so and that defendant stated it was the one "they rented." The evidence tended to show that the other defendants had rented the U-Haul truck from a dealer in another municipality the day before the offense. The attorney for the appealing defendants objected after the answer was made, but failed to move to strike the unresponsive part of the answer or request that its admission be limited. *Held:* The objection was waived by failure to move to strike or to limit the answer.

MOORE, J., not sitting.

SHARP, J., dissents.

APPEAL by defendants James Bell, Jr., Yohannes Haile Mariam, alias Harold Wesley Jones, from *Johnson, J.,* March, 1966 Criminal Session, ROBESON Superior Court.

The appellants, together with Ernest Charles Battle and Roosevelt Wallace, were charged in a bill of indictment containing three felony counts. The first count charged a conspiracy to break and enter the storehouse of one M. H. McLean, Jr., in Lumberton, with intent to steal the goods, chattels, money, etc. The second count charged the felonious breaking and entering pursuant to the conspiracy with the intent to steal and carry away the merchandise, chattels, etc., the property of M. H. McLean, Jr. The third count charged that pursuant to the conspiracy the defendants did have in possession, without lawful excuse, certain implements of housebreaking, to-wit: railroad wrench, lug wrench, and a pair of gloves.

At the call of the case for trial on the morning of January 13, 1966, the appellants Bell and Mariam, through counsel of their own selection, entered pleas of not guilty and each moved for a severance. The court denied the motions. The defendants Battle and Wallace, through court appointed counsel, entered pleas of not guilty. The jury was impaneled and during the morning session of the court the State began presenting its evidence.

At the beginning of the afternoon session, the court, for the reason indicated, entered the following order:

"Mr. N. L. Britt, attorney for the defendant, Roosevelt Wallace, having become ill during the Noon recess and said attorney be-

ing unable to proceed with the trial of this cause by reason of said illness, and it appearing to the Court and the Court finding as a fact that it would be prejudicial to the rights of the State of North Carolina to attempt to proceed with the trial of this cause against the defendants, James Bell, Jr., Yohannes Mariam, and Ernest Battle, and that since by reason of Mr. Britt's illness the trial cannot proceed against the defendant, Roosevelt Wallace, the court is of the opinion that it has no choice other than to withdraw a juror and declare a mistrial and the court in its discretion and in the interest of justice withdraws juror number 1, Lawrence McDuffie and orders a mistrial. It is ordered that each defendant post a $5,000.00 bond.

"To the signing and entry of the foregoing Order, the defendants, Bell and Mariam, except, and this constitutes Defendants' Exception #3."

The case was again called for trial at the March 7, 1966 Session of the Superior Court. Counsel for Bell and Mariam renewed their motions for a severance. When the court denied the motions, the defendants entered pleas of former jeopardy based on the arraignment and the mistrial order over their protests at the January Session of the court. The court denied the pleas of former jeopardy.

The State introduced evidence of which the following is a summary: Mr. M. H. McLean, owner of a wholesale house in Lumberton, which among other property contained $70,000.00 worth of cigarettes, closed the store and locked the building about 7:00 p.m. on Monday, December 13, 1965. Before leaving, he activated the burglar alarm which connected the entrances to the building with the police department. A breaking into the building sounded the alarm in the police headquarters but made no noise whatever at the building. Shortly before 2:00 a.m. on the morning of December 14, the alarm sounded in the police headquarters. Immediately the officer in charge called the cruising police cars over radio and within four or five minutes a number of cars, which were also in radio communication with each other, converged on the building. When the police car arrived at the front the officers found that a padlock had been broken and the door had been forced open. After a few moments delay, officers entered the door from the front. After searching first the office, they continued the search and found the defendant Battle hiding under a truck which was inside the building.

Officer Walters and others in his police vehicle pulled up behind a 1959 Buick automobile parked across the street 60 or 70 feet from

the rear of the McLean building. At that time the defendant Wallace was approaching the Buick from the rear of the McLean building. He was arrested. In the Buick were appellants Bell and Mariam, with the doors locked. They pretended to be very soundly asleep. However, as the officers came up to the vehicle, Mariam had a lighted cigarette in his hand. This he extinguished before he appeared to arouse sufficiently to open the door. This Buick carried a Georgia license tag.

About one o'clock, a.m., on the same morning, approximately one hour before the burglar alarm sounded, Officer Johnson of the State Highway Patrol, observed a 1959 Buick with a Georgia license tag followed by a U-Haul truck on Interstate 95 a few miles north of Lumberton. Both vehicles stopped, then made a left turn towards Lumberton. Officer Johnson turned to the right and continued on to Red Springs.

Harry Kilpatrick testified he worked for U-Haul Service Company in Raleigh, and on Monday, December 13, 1965, shortly after six o'clock, p.m., he leased to the defendant Wallace a U-Haul truck which was later returned to him by the police in Lumberton. With Wallace at the time were the defendants Bell and Mariam. Another man, whom he did not see well enough to identify, remained in the automobile. The three others, Wallace, Bell and Mariam, entered the building where he worked and rented the U-Haul truck and paid him $40.00 rental. They stated they wanted to use it to move furniture from Raleigh to Durham. The U-Haul truck was found abandoned in Lumberton, a distance of 92 miles from Raleigh.

The defendant Wallace, when arrested, was wearing an "Esso" uniform marked "F. Walker, X-489-5." Another uniform with identical markings and size was found in the Buick in which Bell and Mariam were pretending to be asleep and towards which Wallace was walking at the time of his arrest.

At the close of the State's evidence all defendants moved to dismiss all counts in the bill. The court overruled the motions as to counts (1) and (2) and allowed the motion as to count (3)—the possession of implements of housebreaking.

The defendant Battle testified in his own behalf. He admitted he lived in Raleigh. In consequence of what he told the officers, they located the U-Haul truck. Officer Lovett testified as to admissions made by Battle after his arrest. The officer was asked this question: "Did Battle ever describe to you the truck?" Answer: "He identified one." Question: "Did you show him one?" Answer: "Yes, sir, U-Haul truck at the police station which he said was the truck they rented in Raleigh and left in Lumberton."

Objection by Bell and Mariam. Court: "The objection came too late . . . Overruled." Bell and Mariam excepted.

The defendants did not move to strike the officer's statement as unresponsive to the question. At the close of all the evidence the appellants' motions for nonsuit on counts (1) and (2) were overruled. Exceptions were noted. The jury returned verdicts of guilty against all defendants. From prison sentences of 10-14 years imposed on Mariam and 5-7 years on Bell, both defendants appealed.

*T. W. Bruton, Attorney General, George A. Goodwyn, Assistant Attorney General for the State.*

*Johnson, McIntyre, Hedgpeth, Biggs & Campbell by John W. Campbell for defendant appellants Bell and Mariam.*

HIGGINS, J.   The appellants argue they are entitled to a reversal of the judgments against them on either of two grounds: (1) Their plea of former jeopardy should have been sustained; (2) their motions for directed verdicts of not guilty, made at the close of all the evidence, should have been allowed. They contend, further, that if the Court should hold they are not entitled to have the judgments reversed and the cause dismissed, they are entitled to a new trial (1) for failure of the court to grant their motions for a severance, and (2) for the alleged error in permitting the unresponsive answers of Officer Lovett (as to Battle's admissions) to remain in the case.

At the January Session, 1966, the defendants were arraigned, entered pleas of not guilty, a jury was impaneled, and the State began the introduction of testimony. Due to the sudden illness of the attorney representing the defendant Wallace, the court, over objection of the appellants, ordered a mistrial and continued the case against all defendants. Decision on the plea of former jeopardy depends upon the validity of the mistrial order. Unless that order can be upheld, jeopardy attached, and the plea would be good. If the order is valid, the plea is not good.

The power of the presiding judge to order a mistrial in a criminal case after the jury has been impaneled, and before verdict, has been the subject of review by this Court beginning with *State v. Garrigues,* 2 N.C. 241. The many subsequent decisions dealing with the court's power to discharge a jury and order a new trial have been analyzed by Parker, J., (now C.J.) in *State v. Cofield,* 247 N.C. 185, 100 S.E. 2d 355; by Bobbitt, J. in *State v. Crocker,* 239 N.C. 446, 80 S.E. 2d 243; by Stacy, C.J., in *State v. Harris,* 223 N.C. 697, 28 S.E. 2d 232, and in *State v. Beal,* 199 N.C. 278, 154 S.E. 604. " 'It is

only in cases of necessity in attaining the ends of justice that a mistrial may be ordered in a capital case without the consent of the accused.' " *State v. Boykin,* 255 N.C. 432, 121 S.E. 2d 863.

For obvious reasons the rule against a mistrial finds its maximum rigidity in capital cases. A more flexible rule applies in cases of less gravity. "The ordering of a mistrial in a case less than capital is a matter in the discretion of the judge, and the judge need not find facts constituting the reason for such order." (citing many cases) *State v. Humbles,* 241 N.C. 47, 84 S.E. 2d 264. "We conclude that the trial judge in cases less than capital may, in the exercise of sound discretion, order a mistrial before verdict, without the consent of the defendant, for physical necessity such as the incapacitating illness of judge, juror or material witness, and for 'necessity of doing justice' . . . His order is not reviewable except for gross abuse of discretion, and the burden is upon defendant to show such abuse." *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838. The incapacitating illness of the only counsel for one defendant, which developed after the trial began, is within the rule. The order withdrawing a juror, declaring a mistrial, and continuing the case to the next session of the court was valid. Hence the plea of former jeopardy was properly denied.

The evidence offered by the State was ample to go to the jury as to all defendants on the first and second counts in the bill. Battle was caught inside the building, hiding under a truck. He lived in Raleigh. Wallace, Bell and Mariam, and another who remained in the automobile and was not identified, appeared at the U-Haul shop in Raleigh where the three rented a U-Haul truck, stating they wanted to move furniture from Raleigh to Durham. A few hours later the same night an officer on highway patrol saw a 1959 Buick with a Georgia license accompanied by a U-Haul truck driving toward Lumberton. Within an hour the burglar alarm alerted the police that a break-in was occurring at the McLean Building. Cruising officers in police vehicles, in radio contact with headquarters and with each other, surrounded the building within minutes after the alarm. Bell and Mariam, pretending to be asleep, though Mariam had a lighted cigarette, were in a 1959 Buick with Georgia license parked 60 to 70 feet from the rear of the building at approximately two o'clock in the morning. Wallace, perhaps on watch at the rear, evidently alerted by the police cars, made for the Buick and his companions. He was arrested between the McLean building and the parked vehicle. He was wearing an "Esso" uniform with these markings: "F. Walker. X-489-5." Another uniform with identical markings was in the Buick occupied by Bell and Mariam.

·The foregoing is the main thrust of the State's evidence. Though circumstantial as to all defendants except Battle, it is sufficient to sustain the conviction of all defendants. *State v. Bridgers,* 267 N.C. 121, 147 S.E. 2d 555; *State v. Roux,* 266 N.C. 555, 146 S.E. 2d 654; *State v. Moore,* 262 N.C. 431, 137 S.E. 2d 812; *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431. The motions for directed verdicts were properly denied.

Did the trial court commit error in denying each of the defendants a separate trial? Ordinarily, where defendants are charged with a conspiracy — an agreement whereby they became partners in crime — they should be tried together unless some sound reason is made to appear which would require a severance. If, for example, the State must rely exclusively on admissions separately made, though involving others as well as the maker, an instruction limiting the testimony to the maker is not too satisfactory. See *State v. Bonner,* 222 N.C. 344, 23 S.E. 2d 45. In *Bonner,* the defendants were separately indicted but tried together and their separate confessions were so tied together that each defendant was prejudiced by his co-defendants' admissions. The Court has established the rule, however, that the motion for severance is left to the sound discretion of the presiding judge. "The granting or refusing of the motion for a separate trial . . . rested in the sound discretion of the trial judge." *State v. Hines,* 266 N.C. 1, 145 S.E. 2d 363; *State v. Anderson,* 208 N.C. 771, 182 S.E. 643; *State v. Donnell,* 202 N.C. 782, 164 S.E. 352; See Strong's N. C. Index, Supplement to Vol. I, Criminal Law, § 87. In this case the court did not commit error in denying the motions for a separate trial.

By Assignment of Error No. 13 the appellants raise a question not altogether free from difficulty. The weakest link in the State's evidence is the connection between Battle who was found in the building, and the other defendants who were outside. Only through Battle is the State able to connect the others with the actual breaking and entering. Another man, not identified, remained in the car in Raleigh when Bell, Mariam and Wallace rented the U-Haul truck. In consequence of what Battle had disclosed to the officers after his arrest, they were able to recover the U-Haul truck in Lumberton. After the State had rested, Battle elected to testify in his own behalf. After he had testified, Officer Lovette was recalled and asked these questions "Did Battle ever describe the truck to you?" Answer: "He identified one." Question: "Did you show him one?" Answer: "Yes, sir. U-Haul truck at the police station *which he said was the truck they rented in Raleigh and left in Lumberton.*" After the questions were asked and the answers were in, the attorney for

the appellants objected. The court replied: "The objection came too late, Mr. Campbell. Overruled."

It appears obvious the answer was not responsive to the question. The officer volunteered the underscored portion of the answer before any objection was made. The defendant's counsel should have moved to strike as unresponsive; or, in any event, to have the answer admitted and considered against Battle alone. The unlimited answer strengthened the State's case at its weakest link and tended to tie in Battle with the others. Did failure to request the court to strike the answer or to limit its application to Battle alone waive the objection?

"In case of a specific question, objection should be made as soon as the question is asked and before the witness has time to answer. Sometimes, however, inadmissibility is not indicated by the question, but becomes apparent by some feature of the answer. In such cases the objection should be made as soon as the inadmissibility becomes known, and should be in the form of a motion to strike out the answer or the objectionable part of it." Stansbury, Evidence, § 27, p. 51, citing *Gibson v. Whitton,* 239 N.C. 11, 79 S.E. 2d 196. McIntosh, 2d Ed., N. C. Practice and Procedure, § 1533, states the rule: "Where a party has failed to object to evidence at the proper time, he may still ask the court to strike it out." (citing *Johnson v. Allen,* 100 N.C. 131, 5 S.E. 666) "The defendants, however, did not move to strike the nonresponsive parts of the doctor's answers. Hence the objection was waived." *Gatlin v. Parsons,* 257 N.C. 469, 126 S.E. 2d 51; *Edgerton v. Johnson,* 217 N.C. 314, 7 S.E. 2d 535; *Bryant v. Construction Co.,* 197 N.C. 639, 150 S.E. 122. "The part of the answer . . . is not . . . responsive to the question. Objection, therefore should have been made to the answer rather than to the question, and a motion submitted to strike it out. This is generally true when the answer is objectionable and is not responsive to the question. . . . There are numerous cases which require that course to be taken in order to save the party's rights." *Hodges v. Wilson,* 165 N.C. 323, 81 S.E. 340. The objectionable part of the answer was volunteered by a witness. If it had been responsive to the question, the evidence would have been competent against Battle. However, the other defendants, upon request, were entitled to have the admission restricted to Battle who made it.

The foregoing and many other authorities recognize that a witness may insert in his answer something which was beyond the question, but when that occurs the attorney for the complaining party should move to strike or to limit the reply, as the interest of his client may require. Even valid objections may be, and are usually

waived in the ordinary case by failure to follow the recognized practice by motion to strike or by motion to limit if the evidence is not competent against all charged. This appears to be such a case.

No error.

MOORE, J., not sitting.

SHARP, J., dissents.