STATE OF NORTH CAROLINA v. JEROME PASCHAL

No. 6912SC473

(Filed 22 October 1969)

1. Criminal Law § 104— motion for nonsuit — consideration of evidence

Upon motion for nonsuit, the evidence is to be considered in the light most favorable to the State, and the State is entitled to have the benefit of every reasonable inference to be drawn therefrom.

2. Criminal Law § 106— motion for nonsuit — sufficiency of circumstantial evidence

If a motion for nonsuit challenges the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances.

**3. Automobiles §§ 66, 113— manslaughter — identity of driver — sufficiency of evidence**

In this prosecution for manslaughter resulting from a collision which occurred while defendant's car was being pursued by two police cars, the State's evidence of defendant's identity as the driver of the pursued automobile *is held* sufficient for submission of the case to the jury, where it tends to show that defendant's automobile collided violently into the side of another automobile, that defendant was found pinned beneath the steering wheel moments after the collision, and that the person who defendant contended was driving was found wedged in the right front seat with the hood on the right side protruding through the windshield into his neck, a reasonable inference from the evidence being that the bodies of the occupants of defendant's automobile were immediately affixed in the wreckage by the impact in substantially the same position they occupied immediately before the collision.

**4. Automobiles §§ 66, 113— manslaughter — identity of driver — conflicting evidence — jury question**

In this prosecution for manslaughter growing out of an automobile collision, conflict in evidence of the State and of the defendant as to who was driving defendant's automobile at the time of the collision presented a question for the jury.

**5. Automobiles §§ 45, 112— manslaughter — speed of car 1½ miles prior to accident — admissibility**

In this manslaughter prosecution resulting from an automobile collision which occurred while defendant's automobile was being pursued by two police cars, the trial court properly admitted testimony by the pursuing police officers as to the speed of defendant's automobile approximately one and one-half miles from the point of the collision.

**6. Criminal Law § 117— instructions — credibility of witnesses**

In this manslaughter prosecution, the trial court properly instructed the jury regarding the credibility of witnesses.

**7. Automobiles § 114; Criminal Law § 112— instructions — circumstantial evidence**

In this manslaughter prosecution growing out of an automobile collision, the jury was sufficiently instructed on circumstantial evidence where the court explained the nature of circumstantial evidence, how it was to be weighed and that defendant should be acquitted unless the evidence was clear, convincing and conclusive and excluded all doubt that defendant was the driver of the automobile at the time of the collision.

**8. Criminal Law § 166— abandonment of assignments of error**

Assignments of error are deemed abandoned where no reference, argument or citation relating thereto is brought forward in the brief. Rule of Practice in the Court of Appeals No. 28.

APPEAL by defendant from *Bickett, J.,* 19 May 1969 Regular Criminal Session of Superior Court of CUMBERLAND County.

The defendant was charged in four separate bills of indictment with manslaughter. The cases were consolidated for trial and the defendant entered a plea of not guilty in each case.

It was stipulated at the trial that the death charged in each indictment resulted from personal injuries received and sustained as a result of a collision between the defendant's 1968 Chevrolet automobile and a 1967 Renault automobile at approximately 9:30 P.M., 5 November 1968, at or near the intersection of Kensington Circle and Ramsey Street in the City of Fayetteville.

Fayetteville police officer Ernest McCoy testified for the State that he saw the defendant's automobile exit from the parking lot of Vick's Drive-In minutes before the accident. The automobile turned north on Hillsboro Street at a high rate of speed, "fish-tailing," squealing tires and making a loud roar. Officer McCoy turned on his blue light and siren and gave chase. The automobile continued down Hillsboro Street for approximately 2/10 of a mile, attaining, in the opinion of the officer, a speed of 60 miles per hour. It then turned right on Chance Street and proceeded approximately 4/10 of a mile to Ramsey Street where it turned left and proceeded north about a mile to the intersection of Ramsey Street and Kensington Circle where it collided with a 1967 Renault automobile which was in the process of turning left from Ramsey Street onto Kensington Circle and across the path of the defendant's automobile. In Officer McCoy's opinion, his police car was travelling in excess of 100 miles per hour on Ramsey Street. "I was about, I guess, two hundred feet behind the Chevrolet when we came off of Chance Street — and he was leaving me. When we came to the crest of the hill, I slowed down a little bit because I knew there was a red light on the other side of the hill. . . . When I got to the top of the hill the impact had already taken place. The cars were still sliding down the side." Except for a period of "possibly one second" when he slowed at the crest of the hill immediately before the collision, Officer McCoy kept the Chevrolet automobile within his vision. During this time the automobile proceeded without stopping through three stop signs. It swerved and almost hit a truck at the intersection of Hillsboro and Chance Street. At no time did the automobile stop or appreciably slow down in response to the blue light and siren of the police car.

Daniel H. DeVane testified that on the night of the collision he was on duty as a police officer for the City of Fayetteville. He went to Vick's Drive-In in response to a call and as he arrived there he saw the defendant's Chevrolet automobile leave at a high rate of speed. DeVane radioed to Officer McCoy to "stop the blue Chevelle"

and he then joined in the pursuit immediately behind Officer Mc-Coy's police car. His further testimony corroborated that of Officer McCoy.

Both of the police officers arrived immediately at the scene of the collision. The vehicles involved were completely demolished. The pavement was torn up at the intersection. The Renault had come to rest 115 feet past the intersection and the Chevrolet had come to rest 246 feet from the intersection. Mr. and Mrs. Furman Lee Ennis, who had been riding in the Renault, were outside the car and appeared to be dead. Their bodies were badly mangled. The four occupants of the Chevrolet were still inside the car. Officers McCoy and Devane positively identified the defendant as the person whom they found in the left front seat. The steering wheel was pushed up and bent down in his lap, holding him in the car. He was dressed in army fatigues. The person on the right front seat, later identified as Wallace Oakman, was wearing civilian clothes. The hood on the right side had come through the windshield and was still down in Oakman's throat. The right front seat was pushing him onto the dash. The Chevrolet automobile had bucket seats with a console and gear shift lever separating the two front seats.

The State also offered the testimony of Jimmy Ray Cook who testified that he witnessed the collision from a service station lot 250 or 300 feet away. He observed the Chevrolet automobile travelling north on Ramsey Street for approximately three-quarters of a mile with the two police cars in pursuit 150 or 200 feet behind it. In his opinion the Chevrolet was travelling in excess of 100 miles an hour as it collided with the Renault. He further testified that the traffic light at the intersection of Ramsey Street and Hillsboro Street (about 60 to 75 feet south of the intersection where the collision occurred) was red facing south on Ramsey Street when the defendant's car went through it. On cross-examination Cook admitted that he had signed a written statement two days after the accident which contained statements in apparent conflict with his testimony. He insisted, however, that his testimony was the more accurate account of his recollection about the collision.

It was stipulated that the speed limit along most of the route followed by the defendant's automobile was 35 miles per hour. It was 45 miles per hour at the point of the collision.

The defendant testified in his own behalf that on 5 November 1968 he was a member of the Army stationed at Fort Bragg. Just after he got off duty that day he, Wallace Oakman, William H. Coleman and Larry Browder drove in the defendant's car to the

home of defendant's cousin in Fayetteville where they drank some wine. About 8:30 P.M. they proceeded to Vick's Drive-In. On the way the defendant was given a traffic citation for exceeding a safe speed. At Vick's Drive-In the party consumed a six-pack of beer. Two of the passengers in defendant's car started some "commotion" and they all left as someone went inside to call the police. The defendant was driving and Wallace Oakman was riding in the right front seat. As they were traveling on Murchison Boulevard toward Fort Bragg Oakman complained about the defendant's driving and reminded him that he had received a traffic citation earlier that evening. The defendant thereupon surrendered the steering wheel to Oakman and moved to the right front seat. The defendant stated "[a]fter I gave him the steering wheel, I noticed he was going north and I immediately fell asleep. I will say I passed out." The defendant denied ever getting in the driver's seat again or remembering anything further until he awoke some time later in an ambulance.

Larry Browder, the only person in addition to the defendant to survive the collision, was in the courtroom at the trial but did not testify.

The jury returned a verdict of guilty as to the charges contained in all four bills of indictment, and from judgment on the verdict imposing active prison sentences the defendant appealed assigning error.

*Robert Morgan, Attorney General, William W. Melvin, Assistant Attorney General, and T. Buie Costen, Staff Attorney, for the State.*

*Barrington, Smith & Barrington by Carl A. Barrington, Jr. for defendant appellant.*

GRAHAM, J.

The defendant does not contend that the State's evidence was insufficient to show that the crime of manslaughter was in fact committed. He argues, however, that the State failed to offer sufficient evidence to prove his identity as the driver of the automobile involved in the collision and that the court therefore erred in refusing to allow his motion for judgment of nonsuit made at the close of the State's evidence and renewed at the close of all the evidence.

[1, 2]  It is fundamental in this State that upon motions for nonsuit, the evidence is to be considered in the light most favorable to the State, and the State is to have the benefit of every reasonable inference to be drawn therefrom. *State v. Lipscomb*, 274 N.C. 436,

163 S.E. 2d 788; *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679. If the motion challenges the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. "If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Rowland,* 263 N.C. 353, 358, 139 S.E. 2d 661, 665; *State v. Cook, supra.*

[3]    Two witnesses for the State positively identified the defendant as the person they found pinned beneath the steering wheel in' a "bucket seat" moments after the collision. Officer McCoy was quite specific in his identification: "I am absolutely certain that the man I pulled out from under the steering wheel was Paschal. I knew there was going to be a court case, and I wanted to take a good look at him. I was going to be sure I knew the driver." These same witnesses testified that Oakman, whom the defendant contended was driving, was wedged in the right front seat with the hood on the right side protruding through the windshield and into his neck. There was nothing in the evidence to suggest that the wreck here involved was the type where a car overturns or spins in such a way as to possibly rearrange its occupants. On the contrary, the evidence indicates that the front of the Chevrolet collided violently into the side of the Renault. From all the evidence presented a reasonable inference is that the bodies of the occupants were immediately affixed in the wreckage by the impact in substantially the same ·position they occupied immediately before the collision. To hold otherwise would be to completely disregard the physical evidence.

The civil case of *Parker v. Wilson,* 247 N.C. 47, 100 S.E. 2d 258, involved a collision where the bodies of the occupants were wedged in the wreckage in a manner similar to those of the defendant and Oakman in this case. There Parker, J. (now C.J.), made the following observations at 247 N.C. 47, 53, 54, 100 S.E. 2d 258, 262, 263:

"When the automobile struck the tree at tremendous speed, and the front seat was brought forward almost as far as it could possibly go, and the back seat was pulled loose and thrown up against the windshield on top of the occupants of the front seat, it would seem that there was no opportunity for the occupants of the front seat to have changed the position in which they were sitting immediately prior to the crash. It would further seem that the crash hurled Donald Wilson's head partially out of the windshield on the right side and with his head in that

position his body could not have changed from the position it was in immediately prior to the collision with the tree. It would seem that all the evidence tends to show that Bonnie Patrick was driving the automobile at the time of the fatal wreck."

**[4]**  It is true that the defendant's testimony created a conflict in the evidence. However, this was a matter for the jury to solve and the jury obviously accepted the version of the State. *State v. Turberville,* 239 N.C. 25, 79 S.E. 2d 359.

**[5]**  The defendant challenges the testimony of the police officers as to the speed of defendant's car along Hillsboro Street approximately one and one-half miles from the point of the collision, contending that this evidence was too remote in time and distance to have been relevant. This contention is without merit. The manner and speed in which the automobile was operated from the moment it left Vick's Drive-In until the instant of the collision describes a continuous unbroken attempt by the driver to avoid the pursuing officers irrespective of the consequences. To restrict evidence in such a case to the time immediately preceding the impact would be an unreasonable limitation. See *State v. Bridgers,* 267 N.C. 121, 147 S.E. 2d 555; *State v. Leonard,* 195 N.C. 242, 141 S.E. 736.

**[6]**  The defendant's third and fourth assignments of error relate to the court's charge to the jury. He contends that the jury was not adequately instructed regarding the credibility of witnesses. The record indicates His Honor clearly instructed the jury that it was the sole judge of the credibility of witnesses and could believe all, a part, or none of what a witness said.

**[7]**  The defendant also contends that the court did not sufficiently define and instruct the jury on circumstantial evidence. This contention is not supported by the record. The court explained to the jury the nature of circumstantial evidence, how it was to be weighed, and that unless it was clear, convincing and conclusive and excluded all doubt that the defendant was the driver of the car at the time of the collision he should be acquitted. Furthermore, the court charged that standing alone circumstantial evidence would not justify an identification. The charge was favorable to the defendant. Absent a request, no further instructions were necessary. *State v. Bridgers, supra; State v. Stevens,* 244 N.C. 40, 92 S.E. 2d 409; *State v. Flynn,* 230 N.C. 293, 52 S.E. 2d 791; 3 Strong, N.C. Index 2d, Criminal Law, § 113.

**[8]**  The defendant's remaining assignments of error are deemed

abandoned since no reference, argument or citation relating thereto is brought forward in the brief. Rule 28, Rules of Practice in the Court of Appeals; *State v. Pulley*, 5 N.C. App. 285, 168 S.E. 2d 62.

In the trial below, we find no error.

No error.

CAMPBELL and PARKER, JJ., concur.