State v. Oliver

No. 8018SC1029

(Filed 16 June 1981)

1. **Criminal Law § 96— withdrawal of hearsay testimony—defendant not prejudiced**

Defendant in a homicide prosecution was not prejudiced by hearsay testimony that defendant "stomped" the deceased in the face with his shoes and hit the deceased with a kitchen pot, since the court withdrew the testimony and instructed the jury to disregard it, and several of the State's other witnesses gave consistent testimony that during the day following the killing defendant made statements in their presence concerning the alleged murder.

**2. Homicide § 21.7 — second degree murder — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for second degree murder where there was ample circumstantial evidence from which the jury could infer that the deceased was unlawfully killed by being hit on the head with a heavy blunt object and that defendant perpetrated this crime by striking the deceased on the head with a heavy metal pot.

**3. Criminal Law § 114.2 — jury instructions — no expression of opinion**

There was no merit to defendant's contention that the trial court erroneously expressed its opinion by misstating an evidentiary point in its instructions at the close of all the evidence where the court's misstatement of the witness's testimony was inadvertent; defendant did not object to the misstatement before the verdict; and the court specifically cautioned the jury that they should rely entirely on their own recollection as to what the evidence was.

APPEAL by defendant from *Kivett, Judge.* Judgment entered 6 June 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 4 March 1981.

Defendant was charged with the crime of murder in the second degree as defined in G.S. 14-17.

At trial, the state's evidence tended to show the occurrence of the following: On 27 October 1979, at approximately 1:00 a.m., the deceased Walter Sawyer, his brother Ronnie Sawyer, and Ronnie's girl friend went to the home of Mattie Johnson. Mattie Johnson's house was described as a "bootleg house". Defendant Buck Whitley, and Doc Lyons were drinking in the kitchen of the Johnson house when the deceased and his party arrived. Buck Whitley made some insulting remarks to Ronnie Sawyer's girl friend causing Ronnie Sawyer to hit Whitley with his fist. At this point the deceased grabbed Whitley and a general fight ensued between the groups in the kitchen. After several minutes of scuffling in the kitchen, Mattie Johnson halted the fight and told the participants to go outside. Defendant grabbed a metal pot from the kitchen as he left. Once outside, defendant hit Ronnie Sawyer on the back of the head with the pot. The blow dazed Sawyer and he staggered from the scene to get help. Meanwhile, the fighting continued in the rear yard of the "bootleg house". Defendant inflicted several blows to the deceased's head with the pot resulting in the deceased's death. Defendant also kicked or "stomped" the deceased in the face.

Defendant's evidence tended to show that he had participated in the fighting which occurred in the kitchen of the "bootleg house", and that he had grabbed a pot and gone outside where he hit Ronnie Sawyer on the head. Defendant saw the deceased run behind the house. However, he did not follow. Defendant never approached the side or rear of the house, and did not strike the deceased with the pot.

*Attorney General Edmisten, by Assistant Attorney General Tiare B. Smiley, for the State.*

*Assistant Public Defender Frederick G. Lind for defendant appellant.*

ARNOLD, Judge.

[1] Defendant contends in his first assignment of error that the trial court erred by admitting hearsay testimony over his strenuous objection. The alleged hearsay testimony was given by defense witness Jerome Miller. Miller testified that Buck Whitley had told him that defendant "stomped" the deceased in the face with his shoes and hit the deceased with the pot. Defendant insists that the allowance of this hearsay was highly prejudicial to his case, and that the statement did not fall within any of the exceptions to the hearsay rule.

The circumstances preceding the allowance of this testimony are important to an understanding of why the trial court mistakenly let it in. On direct examination, the witness Miller stated that defendant told him that he had stomped the deceased in the face and beat him on the head with a pot. On cross-examination Miller retreated somewhat from his earlier statement. Miller testified on cross-examination that defendant told him that he hit *someone* with the pot, but he did not name the person he hit. Miller was not sure to whom defendant was referring when he made this statement. This implied that defendant could have been referring to Ronnie Sawyer instead of the deceased when he told the witness he hit someone on the head with the pot. Subsequently, on redirect examination Miller reversed his former testimony on both direct and cross-examination, and stated that Buck Whitley, not defendant, was the one who had told him that defendant had stomped the deceased in the face and hit deceased with the pot. It was at this point on redirect ex-

amination that defendant made several objections to the witness's testimony. The court overruled them. The court apparently was confused upon hearing this testimony, because it concerned the same topic as testimony already given and properly admitted, and yet, the witness, when repeating the testimony for the third time, changed the key fact of the identity of the speaker who gave him the information.

Although this testimony was hearsay, any prejudice to defendant's case was cured and any error rendered harmless by the court's immediate withdrawal of the testimony and instructions to the jury to disregard it. Following defendant's motion to strike Miller's statement, the court instructed the jury as follows:

THE COURT: Ladies and gentlemen, disregard anything that this witness has said that was attributed to Whitley. In trying to make my ruling, it was my understanding that he had been asked about what Mr. Lind's client had said. And it was my view and thinking that he was trying to answer that question; and Mr. Lind continued to object. Apparently he was attempting to quote somebody else. It would be improper for you to consider what he said, as to what Whitley had made a statement with respect to. Do not consider that.

Where the trial court withdraws incompetent testimony and instructs the jury not to consider it, any prejudice is ordinarily cured. *State v. Caddell,* 287 N.C. 266, 215 S.E. 2d 348 (1975); *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970).

When a jury is instructed to disregard improperly admitted testimony, the presumption is that it will disregard the testimony. Lacking other proof . . . a jury is presumed to be rational. . . .

*State v. McGraw,* 300 N.C. 610, 620, 268 S.E. 2d 173, 179 (1980).

Nor is this a case in which the circumstances surrounding the admission of the improper statements were such that the probable prejudicial influence of the statements upon the jury could not be erased by the court's cautionary instructions. The court very clearly instructed the jury to disregard this testimony. Several of the state's other witnesses gave consistent testimony that during the day following the killing defendant made statements in their presence concerning the alleged murder.

Witnesses Minnie Sellers, Brenda Dunlap, and Mary Thomas all testified that they heard defendant say that he had beaten a man with a pot. The consistency of this testimony from various witnesses makes it highly unlikely that the jury would have given excessive weight to the improperly admitted statements of Buck Whitley. There was no prejudicial error in the court's allowance and withdrawal of witness Miller's statement.

Ancillary to this argument, and as his second assignment of error, defendant insists that the court erred by denying his motion for mistrial. Defendant moved for a mistrial immediately following the court's instructions to disregard the hearsay testimony of Jerome Miller just discussed. He contends that the prejudicial nature of the witness's statement coupled with the court's undue admonishment of defense counsel in the presence of the jury resulted in such prejudice as should require a new trial.

> Ruling on a motion for mistrial in a criminal case less than capital rests largely in the discretion of the trial court. *State v. Battle*, 267 N.C. 513, 148 S.E. 2d 599 (1966).

*State v. McGraw*, supra, at 620, 268 S.E. 2d at 179; *State v. Yancey*, 291 N.C. 656, 231 S.E. 2d 637 (1977). The incident of which defendant complains was not of such a nature as to render a fair and impartial trial impossible. We have already held that the error resulting from the court's admission of the hearsay testimony was rendered harmless by the court's instructions to disregard the testimony.

Nor do we think that the court's admonishments to defense counsel at this juncture in the trial were sufficient to convey to the jury a judicial leaning against defendant thereby prejudicing his case. The record shows that defense counsel made three objections, all overruled, to the admission of the hearsay testimony of Jerome Miller. The court's admonishments to defense counsel at these points were not unnecessarily long or harsh. The witness's statements were given in answer to the state's question in which it asked what defendant had told the witness concerning the killing. The state did not ask the witness what Buck Whitley had told him. The state was trying to reconcile the witness's testimony on direct and cross-examination. The court obviously did not realize that the witness was not responding directly to the state's question. When the court realized its mistake in over-

ruling these objections, it very clearly explained to the jury why it had made this error. The court's admonishments to defense counsel standing alone do not impart a sense of any judicial leaning against defendant. Furthermore, the court's explanatory instructions cured any possible prejudice to defendant. Consequently, we find no abuse of discretion, and no error in the denial of defendant's motion for mistrial.

[2] Next, defendant contends that the court should have allowed defendant's motion to dismiss due to the insufficiency of the evidence. Defendant argues that the evidence presented against defendant was entirely circumstantial and that the evidence when viewed in the light most favorable to the state did not show that defendant was the perpetrator of the homicide.

We disagree. The question presented by the motion to dismiss, in legal significance, the same as a motion for nonsuit, is whether the evidence is sufficient to warrant the submission of the case to the jury and to support the verdict of guilty. *State v. Cooper*, 275 N.C. 283, 167 S.E. 2d 266 (1969). Well-established principles apply. All the evidence favorable to the state, whether competent or incompetent must be considered. This evidence must be deemed true and considered in the light most favorable to the state. The state is entitled to every inference of fact which may reasonably be deduced therefrom. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). There must be substantial evidence of the elements of the crime charged, and that the defendant was the perpetrator of the crime.

Nonsuit should be denied where there is sufficient evidence either direct, circumstantial, or both that the defendant committed the offense charged. *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968); *State v. Russell*, 15 N.C. App. 277, 189 S.E. 2d 800 (1972). The state's case may be based on circumstantial evidence. When a motion to dismiss or motion for nonsuit is based upon the sufficiency of circumstantial evidence, the question for the court becomes whether a reasonable inference of defendant's guilt of the crime charged can be drawn from the circumstances. *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972); *State v. Paschal*, 6 N.C. App. 334, 170 S.E. 2d 95 (1969). Here there was ample circumstantial evidence from which the jury could infer that the deceased was unlawfully killed by being hit on the head with a

heavy blunt object, and that defendant perpetrated this crime by striking the deceased on the head with a heavy metal pot. Dr. Tate, a medical examiner for the state, and qualified expert, testified that it was his opinion that the deceased's death was caused by a "blunt-force" injury to the head and brain. He also testified that a blow to the head with a pot such as that put into evidence by the state would have caused the death. Other evidence tended to show that defendant had been involved in a fight with the deceased at Mattie Johnson's house on the morning of the deceased's demise. During this fight defendant had been wielding a pot. Defendant hit Ronnie Sawyer on the head with the pot. Jerome Miller testified that he heard what sounded like thumps come from behind the Johnson house. These thumps sounded like a heavy object being blunted against something. The deceased's body was later discovered behind the Johnson house. Upon hearing the thumps, Miller walked to the side of the house and called to those in the rear. Whereupon, Doc Lyons followed by defendant came walking out from the side of the house. Defendant was carrying the pot. The pot was later found by the authorities in defendant's possession.

Witnesses Minnie Sellers, Brenda Dunlap, and Mary Thomas testified that later the same day defendant said in their presence that he had beaten the "dude" with a pot.

Considering all of this evidence, along with other evidence appearing in the record, it is clear that the case was properly submitted to the jury.

[3]  Defendant contends that the trial court erroneously expressed its opinion in violation of G.S. 15A-1232 by misstating an evidentiary point in its instructions at the close of all of the evidence. Defendant objects to the court's recapitulation of Jerome Miller's testimony as follows:

> And that he saw Warnella Whitley coming from the side of the house; and Big Toe Joe, or Harvey Oliver, coming from an area to the rear of the house, walking along beside the house, or at the side of the house, and that he had a pot in his hand at that time; and that the defendant and others left.

It is true, as defendant alleges, that the witness did not directly state that he saw defendant come from the rear of the

house where the deceased's body was subsequently found. However, the witness testified that he saw defendant come from the side of the house, and the witness had just been at that side of the house and seen no one. Previously, the witness had heard noises to the rear of the house. The natural inference to be drawn from this testimony was that defendant had come from the rear of the house.

The misstatment by the trial court was a slight inadvertence. Defendant did not object to the misstatement before the verdict, yet he now contends that it was material error. Our Supreme Court has held, "that an inadvertence in recapitulating the evidence must be called to the attention of the court in time for correction and that an objection after verdict comes too late. *State v. Monk,* 291 N.C. 37, 229 S.E. 2d 163 (1976); *State v. Mc-Clain,* 282 N.C. 396, 193 S.E. 2d 113 (1972); *State v. Cornelius,* 265 N.C. 452, 144 S.E. 2d 203 (1965); *State v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608 (1950)." *State v. Davis,* 291 N.C. 1, 16-17, 229 S.E. 2d 285, 295-96 (1976).

Furthermore, the court specifically cautioned the jury as follows: "You are absolute judges of the facts. Consequently, if I, in making my summary of the evidence to you, should state . . . that something is in the evidence that differs from your rememberance as to what the evidence is, to that extent disregard what I will have to say about it . . . and rely entirely on your own recollection, you being the sole judges of the fact."

We are convinced that the court's misstatement of the witness's testimony was inadvertent and did not amount to a statement by the court of its opinion of defendant's case in violation of the statutory prohibition. Nor do we think that the court's inadvertence influenced the jury's verdict. Therefore, this assignment of error is overruled.

For similar reasons defendant contends that the court committed prejudicial error by stating in its instructions that state's witness Miller heard defendant say on the morning after the incident, "that he stomped and beat a man with a pot the night before." Defendant alleges that the facts in evidence do not support this statement. Instead, he argues, that the witness's testimony shows that all he heard defendant say was, "that the defendant hit the man with a pot."

Witness Miller testified on direct that defendant told him, "[t]hat he stomped Jap [deceased] in the face, and beat him in the head with the pot." On cross-examination the witness changed his testimony and said that defendant did not mention whom he hit with the pot, but he just said "that he hit the man with the pot." Then on redirect examination defendant altered his testimony once again and said that Buck Whitley, rather than defendant, had told him all of these things, and the testimony was withdrawn by the judge. The witness's testimony as to what he overheard defendant say was definitely confused.

The court's alleged misstatement will be considered in context. The court charged:

This witness later heard the defendant say, at a house on Cable Street, in a statement that was made not only in his presence, but in the presence of Minnie Sellers, Dianne Adams Dunlap, or Dianne Dunlap, also known as Dianne Adams, and Mary Thomas, that he stomped and beat a man with a pot the night before, . . ."

The witness's testimony is unclear as to what he actually heard defendant say on Saturday morning, if he heard anything. However, Mary Thomas did testify that on Saturday morning defendant said, "that he stomped him in the face, and hit him in the head with the pot." This tends to explain what caused the court to make its slight overstatement.

The court's misstatement was not material when considered along with the testimony of Mary Thomas, and Dr. Tate's testimony as to the cause of death. Dr. Tate testified that it was his opinion that deceased's death was caused by the "blunt-force" injury to the top of defendant's head. The injuries caused by a foot or a fist to deceased's neck, shoulders, and face were not the cause of death. Therefore, for the purposes of this trial whether defendant stomped or kicked the deceased was immaterial. The blow to the top of the head with the "blunt-force" object caused the death, and all of the witnesses cited in the court's instructions testified that defendant told them he had beaten the "dude" with the pot.

As in the previously discussed assignment of error, defendant failed to object to the court's misstatement in its instructions

before the jury rendered its verdict. Having found that the court's misstatement was not material, under the previously cited authority and rule that an objection to the court's recapitulation of the evidence after the verdict comes too late, we find no error.

Defendant has cited several other assignments of error in his brief, but has not argued them. Under Rule 28(a), N.C. Rules Appellate Procedure, those assignments of error are deemed abandoned.

For the reasons discussed above, we find that defendant received a fair trial free from any prejudicial error.

No error.

Judges MARTIN (Robert M.) and HILL concur.